IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-00127-WYD

ROGER A. DEINES,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision denying a claim for disability insurance benefits.  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    INTRODUCTION AND BACKGROUND

Plaintiff was born in 1965.  He was 37 years old on his alleged onset of disability date and 42 years old on the date of the ALJ's decision.  (Transcript ["Tr."], 47, 81.) Plaintiff has a high school education and worked in the past as a ride operator (roller coaster mechanic), heavy truck driver (furniture delivery), auto mechanic, plumber apprentice, and structural steel worker.  (*Id.* 97, 141.)

In March 2005, Plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  (Tr. 81-83.)  Plaintiff claimed that he became disabled on January 18, 2003, due to chronic back problems, numbness in his

legs, hands, and arms, headaches, hypertension, and depression. (*Id.* 93-94.) After Plaintiff's claim was initially denied (*id.* 64-67), he requested a hearing. (*Id.* 63).

Following a hearing in February 2008 (Tr. 272-322), an administrative law judge ["ALJ"] concluded in a decision dated March 8, 2008, that Plaintiff was not disabled. (*Id.* 29-47). At step one the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2006. (*Id.* 38.) The ALJ also found that Plaintiff had not engaged in substantial gainful activity during the period from January 18, 2003, the alleged onset date, through his date last insured of December 31, 2006. (*Id.*)

At step two, the ALJ found that Plaintiff had the following severe impairments: dysthymic disorder, anxiety-related disorder, and obesity. (Tr. 38.) The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria one of the listed impairments. (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ["RFC"] to: lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk a total of 6 hours each in an 8-hour workday, with normal breaks; alternate between sitting and standing/walking every 45 to 60 minutes if needed; unlimited in push and/or pull activities, including operation of hand and/or foot controls; frequently climb ramps and stairs; occasionally climb ladders and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; no concentrated exposure to extreme heat, wetness, humidity, or vibration; limited to simple, routine, repetitive work, with only occasional face-to-face contact with the public. (Tr. 40). Based on this, the ALJ found at step four that Plaintiff was unable to perform any past relevant work. (*Id.* 45.)

Finally, at step five, in response to a hypothetical question to the vocational expert ["VE"], the VE testified that a person with Plaintiff's RFC could perform the requirements of representative unskilled jobs such as a production assembler and press operator. (Tr. 46.) The ALJ thus found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id*. 46-47.) Accordingly, the ALJ found that Plaintiff was not disabled from January 18, 2003, through December 31, 2006, the date last insured. (*Id*.)

The Appeals Council declined review of the ALJ's decision. (Tr. 6-8.) This appeal followed. This Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

II.  ANALYSIS

   A.  Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

      B.      <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

Plaintiff argues that the ALJ failed to properly weigh the treating physician's opinion. Plaintiff also takes issue with the RFC assessment, and argues that the ALJ erred in discounting his pain complaints and credibility. Further, he contends that the conclusion at step five is not supported by substantial evidence because the jobs cited by the VE did not constitute a significant number, and that the ALJ erred by not conducting a drug and alcohol abuse (DAA) analysis. Finally, Plaintiff argues that the ALJ's evaluation of Plaintiff's credibility was flawed. I address these arguments below.

           1.      <u>Whether the ALJ Erred in Regard to Weighing the Medical Evidence and the RFC</u>

I first address Plaintiff's argument that the ALJ erred in connection with the RFC. RFC is "'a term which describes the range of work activities the claimant can perform despite his impairments.'" *Southard v. Barnhart*, No. 02-7102, 2003 WL 21733145, at *2 (10th Cir. July 28, 2003) (unpublished) (quotation omitted).[1] The ALJ must evaluate a claimant's physical and mental RFC for use in steps four and five of the sequential evaluation process, and must make specific findings regarding same. 20 C.F.R. § 416.920(e); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

---

[1] I cite this and the other unpublished opinions in this Order because the cases have persuasive value with respect to material issues in the case. 10th Cir. R. 32.1(A).

"In arriving at an RFC, agency rulings require an ALJ to provide a narrative discussion describing how the evidence supports his conclusion." *Lawton v. Barnhart*, No. 04-1050, 2005 WL 281378, at *10 (10th Cir. Feb. 7, 2005) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *7).  Further, "[t]he ALJ must:

> discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

*Id.* (quoting *id.*).  The ALJ must also explain how any material inconsistencies or ambiguities in the record were considered and resolved.  *Id.*  Further, the ALJ's RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  *Id.*  "A function-by-function evaluation is necessary in order to arrive at an accurate RFC."  *Id.* (quotation omitted).

In developing the RFC, the ALJ must consider the limiting effects of all the claimant's impairments.  20 C.F.R. § 416.945; *see also Bowman*, 511 F.3d at 1272-73.  The ALJ must also address both the exertional and nonexertional capacities of the individual.  *Southard*, 2003 WL 21733145, at *3.  "The ALJ's findings must . . . be specific because the hypothetical questions submitted to the VE must state the claimant's impairments 'with precision.'"  *Armer v. Apfel*, Nos. 99-7128, 98-CV-424, 2000 WL 743680, at *2 (June 9, 2000) (unpublished) (quotation omitted).

I find that the ALJ erred with regard to the RFC assessment.  First, I find that the ALJ erred as to the physical component of the RFC by not describing how the evidence

-5-

supports *each* conclusion [in the RFC], citing *specific* medical facts ... and nonmedical evidence.'" SSR 96-8p, 1996 WL 374184, at *7 (emphasis added).  While the ALJ stated what evidence he relied on for the mental RFC, giving "substantial weight" to the opinion of Dr. Houston (Tr. 44-45), the ALJ appeared to give no weight to the medical evidence regarding Plaintiff's physical functional limitations, including the medical source statements and other medical findings of treating physician Dr. Reed.  (*Id.* 43-44.)  Further, it is it is unclear what other evidence he relied on to support each of his findings in the RFC related to Plaintiff's physical abilities.  This is reversible error that requires remand.  *See Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. Dec. 16, 2005) (unpublished) (remanding the case to the Commissioner where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was thus unable to determine what evidence the ALJ relied on in connection with the RFC).

      Second, I find that the ALJ failed to properly weigh treating physician Dr. Reed's opinions in connection with the RFC.  The ALJ stated that he gave "lesser weight" to Dr. Reed's Medical Source Statement of January 2007.  (Tr .43.)  It is unclear from this what actual weight was given Dr. Reed's medical findings in that report; however, it appears that the ALJ gave Dr. Reed's opinions no weight.  *See  Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'[A]n ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinions and the reason for that weight.'"). Further, the ALJ did not discuss or state what weight he gave to the other opinions of Dr. Reed in the record, both as to Plaintiff's mental and physical RFC, as well as Dr. Reed's medical findings. A doctors's statements about Plaintiff's condition or impairments "are specific medical findings" which the ALJ errs in rejecting in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). "Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quotation omitted).

There is no indication in the record that the ALJ considered whether Dr. Reed's opinions were entitled to controlling weight or what other amount of deference should be given to Dr. Reed's opinions. (Tr. 43.) This was also reversible error that requires a remand. The Tenth Circuit recently stated that its "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.*

Further, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. "If this is not done, a remand is required." *Id*. *Krauser* cited the relevant ruling, which explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported . . . or is inconsistent with the other substantial evidence in the case record *means only that the opinion is not entitled to 'controlling weight', not that the opinion should be rejected.* Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

*Id*. (quoting SSR 96-2p, 1996 WL 374188, at *4) (emphasis added). Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id*. (emphasis in original).

In *Krauser*, the Tenth Circuit found that the ALJ's assessment of a treating physician's opinion was "patently inadequate for the distinct reason that it ends halfway through the required two-step analysis: the ALJ simply concluded that 'Dr. Lambert's opinion ... cannot be given controlling weight' and then *said no more about it."* *Id*. (emphasis in original). Here, however, the ALJ did not even discuss or consider the first step—whether Dr. Reed's opinions and medical findings, in whole or in part, are entitled to controlling weight, let alone the second step. Further, he did not consider the

relevant factors in determining what weight to give Dr. Reed's opinions and did not state what actual weight he assigned those opinions.

I also find that the reasons given by the ALJ to reject Dr Reed's January 2007 medical source statement are not valid. *See Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (an ALJ must give specific, legitimate reasons for rejecting a treating physician's opinion). The ALJ stated that Dr. Reed provided support for his opinion by referencing "severe back pain" but that "he has no treatment notes supporting that finding, and other substantive evidence of record does not demonstrate objective clinical findings." (Tr. 44.) The ALJ's statement is, however, inaccurate. Dr. Reed's notes clearly substantiate Plaintiff's back pain, and they document objective findings in support of that pain. (*See, e.g.*, Tr. 189-"he has tenderness to palpation from approximately T-8 thru his L-spine and his SI joints bilaterally. Has some paraspinous and muscle tenderness on the right side, greater than the left. . . ROM is decreased in all areas secondary to pain. . . . Assessment: Back strain.").

Further, the record demonstrates other objective clinical findings in the record which support Dr. Reed's assessment, contrary to the ALJ's statement. (*See, e.g.*, Tr. at 193—x-ray results showing "Mild lumbar spondylosis, . . . disc space narrowing at L5-S1 suggests degenerative disc disease at this level"; 183-84—Dr. Kahler's assessment noting that Plaintiff had pain over lumbar area and was very tender when touched all over the lumbar area and finding "Thoracolumbar spondylosis with nerasthenias, "Mild degenerative disc disease"; 165—Dr. Clifford's diagnosis of myofascitis of the lumbar and cervical areas as well as peripheral neuropathy). The ALJ's rejection of Dr. Reed's

opinions regarding Plaintiff's pain and impairments is an improper substitution of his own judgment for that of the doctor in regard to what the medical evidence means. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion.'") (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

The ALJ also stated that "the record fails to suggest that the claimant can only sit, stand, and walk for a combined total of 6 hours in an 8-hour day", as found by Dr. Reed. (Tr. 24.) However, this was error as it was a conclusory opinion unsupported by any medical evidence that contradicts Dr. Reed's findings. *Langley*, 373 F.3d at 1121. Further, there was medical evidence in the record that supported Dr. Reed's findings. For example, Dr. Clifford, an examining doctor, found that Plaintiff's stated physical capabilities, which were very limited and included being only able to sit for 20 minutes and stand 20 minutes, "are probably accurate." (*Id.* 164-65.) The ALJ needed to consider and properly weigh all of the medical evidence in the case. This must be addressed on remand.

Finally, I find that the ALJ erred to the extent he relied on Plaintiff's testimony as describing greater physical functioning. Plaintiff testified, among other things, that he could only sit about 20 minutes before he needs to get up and only stand about a half hour. (Tr. 297.) His testimony was consistent with significant limitations in his physical

abilities, and does not support the ALJ's RFC.  (*Id.* 297-301.)  Indeed, RFC assesses an individual's ability to do 8 hours a day, for 5 days a week, or an equivalent work schedule.  SSR 96-8p(1), 1996 WL 374184, at *1 (1996); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citing 20 C.F.R. § 416.945(c)).  Plaintiff's testimony certainly does not support that.  The ALJ appeared to selectively apply the evidence on this issue, which is improper.  *Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. July 1, 1999) (unpublished) ('[i]n evaluating plaintiff's testimony and comparing it with 'prior statements and other evidence,' . . ., the ALJ was selectively choosing from the record those statements he wished to rely on without properly considering all the evidence. . . . [w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review") (citing cases).

Finally in connection with weighing of the medical evidence, Plaintiff argues that the ALJ should have done a drug and alcohol abuse ["DAA"] analysis.  The ALJ did not state why he did not conduct such an analysis.  This also must be addressed on remand.  As the Commissioner notes, medical expert Dr. Houston testified at the hearing that Plaintiff had a history of substance abuse.  Plaintiff testified that he had not abused drugs since 2004, but also testified that he had used medical marijuana.  The ALJ referenced Plaintiff's use of drugs in connection with his credibility analysis.  In light of the foregoing, I direct the ALJ on remand to state on the record whether a DAA analysis is appropriate and, if he finds it is appropriate, to conduct such an analysis.  *See Salazar v. Barnhart*, 468 F.3d 615, 622-24 (10th Cir. 2006).

Based on the foregoing, I find that this case must be remanded for the ALJ to properly weigh treating physician Dr. Reed's opinions as well as the other medical opinions and reassess the RFC in light of same.[2]  The ALJ must also provide a narrative discussion describing how the evidence supports each of his findings in the RFC. Finally, the ALJ must determine whether a DAA analysis is appropriate.

### 2. Whether the ALJ Erred in Assessing Plaintiff's Credibility

I also find that the ALJ erred in assessing Plaintiff's credibility.  Credibility determinations are peculiarly the province of the finder of fact, and the court should not "'upset such determinations when supported by substantial evidence.'"  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Id.* (quotations omitted).

The ALJ found that Plaintiff's "statements concerning his impairments and their impact on his ability to work are barely credible in light of the medical evidence and the discrepancies between the claimant's allegations and the information contained in the documentary reports." (Tr. 41.)  The ALJ also stated, "[i]n light of his statements that he takes no prescription or over-the-counter medications, and the lack of significant findings by the physicians, the undersigns finds the claimant's complaints of disabling pain not full credible." (*Id.*)  Among other reasons for his finding, the ALJ stated that

---

[2] The ALJ should also consider the new evidence submitted to the Appeals Council, including the letter of October 30, 2009, from Dr. Reed (Tr. 13), since it is now part of the record.  *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

"the record lacks objective clinical finding which would suggest a severe musculoskeletal impairment expected to produce severe pain, and numerous examining physicians have opined the claimant's allegations are out of proportion with the clinical findings of record." (*Id.* 42.)  He also noted that Plaintiff "has not received the type of medical treatment one would expect for a totally disabled individual . . . ."  (*Id.*)

The ALJ appeared to rely heavily on the lack of objective findings for the pain. However, as explained previously, there were ample objective findings and medical reports substantiating pain.  The Commissioner attempts to downplay that evidence, pointing out that when Plaintiff presented to Dr. Reed in 2004 with complaints of persistent back pain, Dr. Reed found some tenderness in the mid-thoracic spine, but normal strength and reflexes in all extremities.  (Tr. 188).  Also, among other evidence, the Commissioner notes that the diagnostic x-rays ordered by Dr. Reed showed only "mild" lumbar spondylosis, no acute abnormality, and disc space narrowing at L5-S1 suggesting degenerative disc disease (*id.* 193, 253), and that Dr. Kahler only found mild thoracolumbar spondylosis and degenerative disc disease.  (*Id.* 267-68).

The Commissioner relies on the above-cited evidence to argue that the record lacked objective clinical findings that would suggest a severe musculoskeletal impairment expected to produce severe pain.  However, as explained previously, the Commissioner cannot make speculative inferences about what the medical evidence means or second guess the judgment of the medical doctors.  *See McGoffin*, 288 F.3d at 1252.  Indeed, "[a]lthough the court "may not second-guess an ALJ's credibility judgments, such judgment by themselves 'do not carry the day and override the medical

opinion of a treating physician that is supported by the record.'" *Id.* (quotation omitted); *see also Romero v. Astrue*, No. 06-6305, 2007 WL 2110899, at *2 (10th Cir. 2007) (unpublished) ("Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation. . . find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence. . . ."). Thus, I reject the Commissioner's argument on this issue.[3]

Since the ALJ incorrectly found that there were no objective findings to substantiate Plaintiff's complaints of pain, the ALJ appeared not to conduct the proper analysis required pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). There are three steps under *Luna*, whereby the ALJ must (1) consider whether Plaintiff established a pain-producing impairment by objective medical evidence; (2) if so, determine whether there is a loose nexus between the proven impairment and Plaintiff's subjective allegations of pain; and (3) if so, determine whether considering all the evidence, both objective and subjective, Plaintiff is disabled by pain. *Luna*, 834 F.2d at 162-63. Since step one is met in this case, the ALJ should have proceeded to steps two and three and considered all the evidence in regard to Plaintiff's pain, including the required factors. *Id.* at 165-66. Even "[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994

---

[3] I also note that even if there were a lack of objective findings, this would not be dispositive. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 347186, at *6; *see also Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988) ("[O]bjective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well. . . .").

WL 266742, at *5 (10th Cir. June 17, 1994) (unpublished).  The ALJ "'must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'"  *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993).  "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do  . . . work."  *Id.*   This also must be addressed on remand.

The ALJ also relied on the fact that "numerous examining physicians have opined the claimant's allegations are of proportion with the clinical findings of record" in finding that Plaintiff was not credible.  (Tr. 42.)  The only doctor that he noted on this issue was examining physician Dr. Kahler's notation that the objective findings for the severity of Plaintiff's pain are exceeded by the amount of subjective complaints.  (Tr. 184.)  That is also the only evidence I found in the record on this issue.  Thus, the ALJ's reference to "numerous doctors" making this finding does not appear to be accurate.
Further, Dr. Kahler's notation does not diminish the objective signs that were present and noted by Dr. Kahler and the other medical doctors or necessarily mean that Plaintiff has no pain.  *See Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) (noting that the ALJ "thought Johnson's complaints about pain exceeded the objective medical evidence, yet pain can be severe to the point of being disabling even though it has no diagnosable cause and thus is entirely in the patient's mind."); *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003) (even if O'Donnell might have been magnifying her pain, "that would not be a reason to discredit her allegations. . . . [a]n "ALJ cannot simply ignore ... medical evidence that [claimant] suffers from pain having its origin in a

psychological disorder"); *see also Fuller v. Astrue*, No. 10-20370JWL, 2011 WL 209527, at *9 (10th Cir. Jan. 21, 2011) (unpublished).

Finally, the ALJ relied heavily on Plaintiff's lack of treatment and failure to take pain medications. (Tr. 41-42.) However, the ALJ did not conduct the proper analysis as to those issues. The Tenth Circuit has stated that "the law requires an ALJ to apply a particular analysis anytime he relies on a failure to pursue treatment as a basis to find that claimant is not disabled. *Fuller*, 2011 WL 209527, at *17 (citing *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993)). Before relying on a failure to pursue treatment, "'the ALJ should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'" *Id.* (quotation and internal quotation marks omitted). The ALJ must also assess whether the claimant lacked the financial ability to pursue treatment or medication, as this may constitute justifiable cause for failing to comply with prescribed treatment. *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *4 (10th Cir. Dec. 8, 2004) (unpublished).

I find the case of *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004) instructive in this case. There, the Tenth Circuit found the ALJ's speculative conclusion about lack of treatment to be "procedurally and legally deficient because he did not make the findings necessary to deny the claim on the basis of claimant's noncompliance with prescribed treatment, nor did he give claimant or her treating physician an opportunity to explain the specific reasons for her failure to take medications to determine if justifiable cause existed for her failure." *Id.* at 1083-84. I find that this

analysis applies equally here.  On remand, the ALJ must conduct the full *Luna* analysis and state valid reasons for accepting or rejecting Plaintiff's complaints of pain.

Finally, I agree with Plaintiff that the ALJ improperly cut Plaintiff's counsel off about Plaintiff's headaches.  When Plaintiff's attorney attempted to query Plaintiff regarding the frequency and severity of his headaches, the ALJ interrupted repeatedly and exclaimed" I don"t want to hear---, I don"t want to hear that---. There"s no medical evidence to support that whatsoever".  The attorney responded, "Headaches are in the file", to which the ALJ said, "Not at that level."  (Tr. 308.)  However, the ALJ has a duty to develop the record as to material issues.  *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993).  Since a social security hearing is "nonadversarial in nature . . . the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised' in that hearing" *Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005) (quotation omitted).  This failure to develop the record regarding headaches also must be rectified on remand.

        3.    <u>Whether the ALJ Erred at Step Five</u>

Plaintiff also asserts that the VE cited jobs that covered a regional area comprised of five states (Tr. 313, 319), and that the number of jobs cited were not limited to a state or a "region".  He argues this is not a sufficient sample and does not constitute substantial evidence at step five. I reject this argument.  The issue is whether there are jobs existing in significant numbers in either the region where Plaintiff lives or several regions of the country, "regardless of whether such work exists in the immediate area...."  *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (quoting 42 U.S.C.

§ 423(d)(2)(A)). The VE's testimony upon which the ALJ relied was not inconsistent with this.[4]

Finally, Plaintiff argues that the VE did not cite to the SPV level of the jobs that she found Plaintiff could do, and that the Tenth Circuit has stated that a level three reason job is incompatible with a job that requires "simple and routine tasks". *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005). Again, I reject this argument. The VE testified that the jobs he found a person with Plaintiff's hypothetical RFC could do were consistent with the Dictionary of Occupational Titles ["DOT"]. (Tr. 313-14.) His finding specifically encompassed the RFC limitation to simple, routine and repetitive work. (*Id.* 314.) Plaintiff has not shown that the VE's findings were actually contrary to the DOT, and my research of the DOT does not support Plaintiff's argument. *See* DICOT 737.684-034 (Production Assembler), 1991 WL 6880038; DICOT 363.685-010 (Press Operator), 1991 WL 673019 (both requiring level two reasoning).

Although I have rejected Plaintiff's arguments relevant to step five, I find that the ALJ may still need to reevaluate his findings at this step on remand. This is because I have directed the ALJ on remand to reweigh the medical evidence and reassess the RFC and Plaintiff's pain. This may well require that the hypothetical question be modified, which will then require a new step five finding. *See Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) (testimony elicited by hypothetical questions that do not

---

[4] The multi-factor analysis set forth in *Trimiar v. Sullivan,* 966 F.2d 1330 (2002) is not applicable in this case because there were a significant number of jobs in the region described by the VE. *See Raymond*, 621 F.3d at 1274 n. 2.

-18-

relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision).

III.   CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly assess Plaintiff's RFC and did not properly weigh the medical evidence.  I also find that the ALJ did not properly assess Plaintiff's credibility regarding pain or develop the record as to Plaintiff's headaches.  Once the ALJ reevaluates these issues on remand, the findings at later steps of the sequential evaluation may also be impacted and need to be reassessed.  It is therefor

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated March 26, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge